IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AGRIAUTO GENETICS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DECARLO HARRIS, individually, | ) |
| CLOUD 13, LLC, an Oklahoma Limited | ) |
| Liability Company, d/b/a CLOUD 13 RX, | ) |
| MUNCHIES RX, LLC, an Oklahoma | ) Case No. 22-CV-273-DES |
| Limited Liability Company, | ) |
| 13 GLOBAL ECOMMERSE LLC, an | ) |
| Oklahoma Limited Liability Company, | ) |
| R3 REALTY GROUP, LLC, an Oklahoma | ) |
| Limited Liability Company, | ) |
| DIVUCCI FARMS, LLC, an Oklahoma Limited | ) |
| Liability Company, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Defendants DeCarlo Harris, Cloud 13, LLC, Munchies RX, LLC, 13 Global Ecommerse, LLC, R3 Realty Group, LLC and Divucci Farms, LLC's (collectively "Defendants") Motion to Dismiss (Docket No. 16). For the reasons set forth below, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part.

I. Background

AgriAuto Genetics, LLC, (herein after "Plaintiff") filed this action on September 26, 2022. (Docket No. 2). In its complaint, Plaintiff alleges that it is a business that provides goods and services, including consulting, in the legal cannabis industry. *Id.* at 4. On or about March 2022, Plaintiff entered into a Services Agreement ("Agreement") with Defendants in which Plaintiff was engaged to plant, harvest, and grow cannabis at Defendants' property in Love County, Oklahoma. *Id.* at 4-5. Pursuant to the Agreement, Plaintiff was responsible for providing seed for growing

1

cannabis; designing the field for the cannabis crop; growing, managing, and harvesting the cannabis crop; and providing Defendants instruction regarding the proper equipment needed for growing and harvesting the cannabis crop, pre-crop preparations, and post-crop preparations. *Id.* at 5. Defendants were responsible for providing and maintaining the equipment necessary, paying for the cannabis seeds, and paying Plaintiff a consulting fee in monthly installments. *Id.* at 5-6.

Plaintiff alleges that it arrived on Defendants' property on June 3, 2022, to begin performance under the Agreement. *Id.* at 6. Due to equipment issues, Plaintiff was limited in its performance but was able to plant approximately 117,000 cannabis seeds on or around June 23, 2022, plus additional seeds on July 14, 2022, and July 21, 2022, for a total of approximately 340,000 seeds planted. *Id.* at 7. Plaintiff continued to have equipment issues which it claims led to "parts of the land began drying out" and the need to "sacrifice two rows of the crop to move forward with cultivation." *Id.* at 8-9. Plaintiff alleges that despite its performance under the Agreement, on August 22, 2022, Defendant Harris informed Plaintiff that he would not be paying: (1) Plaintiff's remaining consulting fee payments; (2) the remaining balance of $141,750.00 for the cannabis seeds; and (3) the expenses incurred by Plaintiff. *Id.* at 10. As a result, Plaintiff ceased all work. *Id.*

On September 26, 2022, Plaintiff filed this action alleging: (1) Defendants violated and breached the Agreement by unlawfully withholding payments due to Plaintiff under the Agreement; (2) Defendants knowingly appreciated and accepted the benefits provided by Plaintiff such as planting, managing and cultivating the cannabis crop, partial retention of the consulting fee due to Plaintiff, and retention of the remaining balance due to Plaintiff under the Agreement and for expenses made in Defendants' favor; and (3) retention of Plaintiff's three "Dehu King" dehumidifiers that were left on Defendants' property, that have not been returned despite

Plaintiff's request they be returned. *Id.* at 12-16. On October 28, 2022, Defendants filed their Motion to Dismiss for improper venue, failure to state a claim upon which relief can be granted, and lack of jurisdiction. (Docket No. 16).

    II.    Analysis

        a. Venue - Forum Selection Clause

Defendants argue that the U.S. District Court for the Eastern District of Oklahoma is not the proper venue for Plaintiff's claim. Specifically, Defendants claim that the Agreement included a forum selection clause designating the exclusive venue for disputes between the parties as "the federal and state courts located in Love County, State of Oklahoma." (Docket No. 16 at 4). According to Defendants, the express agreement and intent of the parties was to bring all claims in a court physically located in Love County, which the U.S. District Court for the Eastern District of Oklahoma is not. *Id.* at 5. Plaintiff argues that venue is proper because the language of the forum selection clause in the Agreement allows for the choice between federal and state court. (Docket No. 23 at 4). The Tenth Circuit has determined that "where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced[.]" *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499 (10th Cir. 2002) (quotation omitted). Since the forum selection clause at issue includes the requisite language that "[e]ach Party hereby *irrevocably submits to the exclusive* jurisdiction and venue of the federal and state courts located in Love County" (Docket No. 2-1 at 7) (emphasis added), the forum selection clause is enforceable. The question then becomes the interpretation of the clause. Under the Agreement, the parties agreed that the laws of the State of Oklahoma would govern. *Id.* Under Oklahoma law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15

Okla. Stat. § 152. "Ordinarily, this means that the contract should be construed according to the plain meaning of its language." *Emps. Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 764 (10th Cir. 2004). Under the plain language of the clause at issue in this case, the parties agreed to submit "to the exclusive jurisdiction and venue of the *federal and state* courts located in Love County[.]" (Docket No. 2-1 at 7) (emphasis added). Thus, it is clear the parties agreed to jurisdiction and venue in either a federal court or a state court. Accordingly, Defendant's Motion to Dismiss based on improper venue is DENIED.

      b.  Illegality Argument

Defendants next argue that Plaintiff's claims for breach of contract and unjust enrichment should be dismissed for failure to state a claim for which relief can be granted, because this Court cannot grant relief in support of illegal conduct. (Docket No. 16 at 5-8). The Court agrees. The United States Congress enacted the Controlled Substance Act ("CSA") which provides that, "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). By virtue of the Supremacy Clause, the CSA is the law of the land. *See* U.S. CONST. art. VI, cl. 2. Because marijuana is classified as a Schedule I controlled substance under 21 U.S.C. § 812(c), the manufacturing, selling, or possession of marijuana is prohibited in the Eastern District of Oklahoma. Defendants argue that Plaintiff seeks assistance of this Court regarding illegal services, specifically, the contracted for sales price of marijuana seeds, monetary compensation for assistance provided and with growing and selling marijuana, reimbursement for expenses incurred in providing such assistance, and to strip Defendants from any benefit it may have obtained from Plaintiff's illegal services. (Docket No. 16 at 6-7, citing Docket No. 2, ¶¶ 46-54). As Defendants correctly note, the Court cannot issue orders that facilitate illegal activity,

namely violations of the CSA. *See United States v. Oakland Cannabis Buyer's Co-op*, 532 U.S. 483, 497 (2001) (holding selling marijuana violated the CSA even where the activity was legal within the state); *Original Invs. LLC v. Okla.*, 542 F. Supp 3d 1230 (W. D. Okla. 2021) (dismissing suit for declaratory relief on Oklahoma's marijuana regulations due to illegality).

Plaintiff asserts that the federal government has become "progressively indifferent to marijuana" and argues that based on Oklahoma's "expressed interest in allowing persons to obtain it, and the federal government's wavering policy on marijuana, purported illegality should not be the basis of non-enforcement of the parties' contract." (Docket No. 23 at 6). Nonetheless, the CSA was in full force when the parties entered into the Agreement, when the alleged breach and unjust enrichment occurred, and it continues to apply in full force in states that have decriminalized marijuana. *Gonzales v. Raich,* 549 U.S. 1, 2-3 (2005). Plaintiff further argues that "the mere fact that unlawful activity is involved in some way does not automatically foreclose contract relief; this includes contracts that might bear some relationship to marijuana." *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258 (D. Colo. 2022). However, even in the cited *Sensoria* case, the District Court of Colorado found that the illegality defense applied to the plaintiff's breach of contract claim because the investment that plaintiffs argued were never paid involved the production and selling of marijuana and related products. *Id.* at 1257-1258.

Plaintiff further relies on *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016). In *Mann*, the plaintiff sold two businesses involved in California's legal medical marijuana industry to defendant and defendant executed a promissory note in favor of plaintiff. *Id*. at *1. Defendant subsequently defaulted on the note. *Id*. Plaintiff filed an action for breach of contract in federal court to recover the amount due under the note. *Id*. The Court in *Mann* determined that there was no evidence that in order to pay what was due under the note, the

5

Defendant would have to possess, cultivate, or distribute marijuana in violation of the CSA. *Id.* at *7. The Defendant in *Mann* argued that the only way she could repay the note would be to operate the business, however the Court rejected these arguments by noting that there was no evidence that she had no other means to pay for the companies and there was no evidence to show that the only way to operate the businesses was to violate the CSA. *Id.* Therefore, the *Mann* court rejected Defendant's illegality argument.

Plaintiff's reliance on *Mann* is unavailing. As an initial matter, the Court notes the decision in *Mann* is non-binding as it is from outside this Circuit. Moreover, *Mann* is factually distinguishable from the instant case. In *Mann,* there was "no indication in the record the[ ] Companies directly grew or sold marijuana." *Mann,* 2016 WL 6473215, at *1. Here, however, Plaintiff admits this case stems from the breach of a contract directly related to the growing and selling of marijuana. Not only did Plaintiff sell marijuana seeds to Defendants, but Plaintiff also assisted Defendants with growing marijuana crops for the purpose of being sold. (Docket No. 2 at 4). There is no way that Plaintiff can lessen the violation of the CSA in requesting relief from this Court. As such, Defendant's Motion to Dismiss Plaintiff's Breach of Contract and Unjust Enrichment is GRANTED.

    c. Diversity Jurisdiction

Under 28 U.S.C. §1332(a), district courts shall have original jurisdiction of all civil actions *where the matter in controversy exceeds the sum or value of $75,000* and is between citizens of different States. (Emphasis added). To establish jurisdiction under 28 U.S.C. §1332, the party invoking federal jurisdiction "must show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000." *Radil v. Sanborn Western Camps, Inc.,* 384 F.3d 1220, 1225 (10th Cir. 2004). Moreover, the Court "must rigorously enforce

Congress' intent to restrict federal jurisdiction in controversies between citizens of different states." *Meira v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339 (10th Cir. 1998) (citation omitted). "The amount in controversy is ordinarily determined by the allegations of the complaint[.]" *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens,* 574 U.S. 81 (2014).

In this case, Plaintiff's complaint alleges Replevin, Conversion, and Trespass to Chattel as it relates to three "Dehu King" dehumidifiers that were purchased by Plaintiff but left on Defendants' property. (Docket No. 2 at 14-16). Plaintiff claims the actual value of each dehumidifier is approximately $5,500.00, making the total value of the three humidifiers $16,500.00. Defendants argue that without Plaintiff's breach of contract or unjust enrichment claims, the amount in controversy is less than the jurisdictional threshold of $75,000.00; therefore, these claims should be dismissed for lack of diversity jurisdiction. The Court agrees. As set forth above, Plaintiff cannot maintain claims for breach of contract or unjust enrichment in this Court due to illegality.  Without these claims, Plaintiff alleges only $16,500.00 in damages, which is clearly less than the $75,000.00 jurisdictional threshold amount.  Accordingly, Defendant's Motion to Dismiss Plaintiff's Replevin, Conversion, and Trespass to Chattel claims is GRANTED.

III. Conclusion

IT IS THEREFORE ORDERED that Defendants DeCarlo Harris, Cloud 13, LLC, Munchies RX, LLC, 13 Global Ecommerse, LLC, R3 Realty Group, LLC and Divucci Farms, LLC's Motion to Dismiss is hereby DENIED in part and GRANTED in part. Defendants' Motion to Dismiss based on Improper Venue is denied; however, Defendants' Motion to Dismiss Plaintiff's Breach of Contract and Unjust Enrichment claims are granted based on illegality and

7

Defendants' Motion to Dismiss Plaintiff's Replevin, Conversion, and Trespass to Chattel claims is granted based on lack of diversity jurisdiction.

    IT IS SO ORDERED this 4th day of December, 2023.

                                                     _____
                                                     D. Edward Snow
                                                     United States Magistrate Judge